UNITED STATED BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | |
| PHILLIPE MAXWELL LEDESMA and ) | Case No. 13-20311 HRT |
| PATRICE MICHELLE LEDESMA, now ) | Chapter 7 |
| known as PATRICE MICHELLE BLAIR, ) | |
| ) | |
| Debtors. ) | |
| ) | Adversary No. 13-01524 HRT |
| ) | |
| CARLA KNOPP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| PHILLIPE MAXWELL LEDESMA and ) | |
| PATRICE MICHELLE LEDESMA, now ) | |
| known as PATRICE MICHELLE BLAIR, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

THIS MATTER came before the Court for trial on the Plaintiff's Complaint. Based on the evidence and argument presented, the Court hereby finds and concludes as follows.

**FACTUAL BACKGROUND**[1]

The Plaintiff, Carla Knopp ("Carla"), owns real property located at 9867 E. Escalante

---

[1] Some of the following facts are undisputed. Where there were differences in the parties' testimony, the facts set forth below represent the Court's findings, based on all the evidence before the Court and based on the Court's observations regarding the parties' credibility. In particular, the Court found Carla to be generally credible. Her testimony was consistent with the other evidence before the Court, including the documentary evidence. The Court found Patrice to be less credible. Her testimony was at times inconsistent and was contradicted by other evidence before the Court. Her attempts to avoid responsibility for much or all of the damage incurred while her family occupied the Property (including assertions that carpet stains were caused by Carla's leaky air conditioner and/or Carla's dog, screen damage was caused by hail, personal property was left by unknown persons) struck the Court as disingenuous.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Case No. 13-01524 HRT

Court in Parker, Colorado (the "Property"). The Property is located on a corner lot on the back side of the Pinery subdivision and includes a tri-level home with a finished basement. The home has approximately 1400 square feet of upstairs space, with three bedrooms, one full bath, and one 3/4 bath, and a finished basement of approximately 700 square feet, with one bedroom and one 3/4 bath.

Carla bought the Property in 2007 and lived there for two years before deciding to move to another home. She attempted to sell the Property, but was unable to do so, given the poor condition of the real estate market at the time. She decided to rent the Property, something she had never done before. She placed a "For Rent" sign on the Property in approximately July of 2009.

Debtor Patrice Michelle Ledesma ("Patrice")[2] noticed the sign and contacted Carla about renting the Property. At the time, Patrice was married to Debtor Phillipe Maxwell Ledesma ("Phillipe"). Their blended family included six children: Jessica, then age 18; Phillipe Jr., then age 16; Jasmine, then age 15; Ashlynn, then age 14; Dalton, then age 13; and Daniel, then age 10. Their family also included three dogs – a rottweiler, a black lab, and a chihuahua – and at least three or four cats.

When Patrice and Carla spoke by phone in late July 2009, Patrice told Carla that Patrice had seen the "For Rent" sign while out walking the rottweiler and the black lab. Carla, a self-described "dog person," had no problem with those two dogs living on the Property. Patrice did not, at that time, tell Carla about the chihuahua or about any of the cats. Carla asked Patrice about the size of her family. When Patrice told Carla about the two adults and six children, Carla expressed concern that the house was too small for that many people. Patrice told Carla that the oldest daughter, Jessica, would be going to college in the fall, and that the oldest son, Phillipe Jr, would be joining the military. The two agreed to meet a few days later for a walk-through of the Property.

Carla, Patrice, and two of the daughters, Jasmine and Ashlynn, were present at the walk-through. During the walk-through, when Carla mentioned the dogs, one of the daughters told Carla that the family also had some cats.

The Ledesma family – Patrice and Phillipe, six children, three dogs, and three or four cats – moved into the Property in early August of 2009. Shortly after the Ledesmas moved in, Carla, Patrice, and Phillipe met to sign the Lease (Plaintiff's Exhibit 1). The Lease states that it is made effective as of August 28, 2009, and that the term is from August 10, 2009, to August

---

[2] During the times relevant to the Plaintiff's Complaint, the Debtors were married to each other. Subsequent to the filing of the Plaintiff's Complaint, the Debtors divorced. Debtor Patrice Michelle Ledesma is now known as Patrice Michelle Blair.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Case No. 13-01524 HRT

10, 2010. The Lease provides that pets shall not be allowed without Carla's prior written consent.

The Lease further provides that Carla may enter the Property for certain purposes, including to inspect the Property. Carla did inspect the Property throughout the Lease's one-year term, coming over approximately every two months and walking through the upstairs rooms and the basement. Carla also spoke to Patrice on the phone. Several times during the Lease term, Carla asked Patrice if the oldest daughter had moved out, and Patrice told Carla that she had not. The children were often present when Carla inspected the Property. The pets were also present. As she conducted her inspections, Carla noticed that the Property was in "fairly neat-ish" condition and that "nothing was horrible."

The Lease expired by its terms on August 10, 2010. On August 5, 2010, Carla, Patrice, and Phillipe signed an Extension of Lease (Plaintiff's Exhibit 2), which states that the parties agreed to extend the Lease from August 15, 2010 to August 14, 2011. The Extension of Lease includes two "Revised Provisions," one regarding late payment fees, and one regarding pets. The provision regarding pets provides: "No additional pets or replacement of any pets."

During the second Lease term, from August 2010 to August 2011, Carla continued her periodic inspections of the Property and continued to speak to Patrice on the phone. The oldest daughter, Jessica, moved out, and Patrice's ex-husband moved into Jessica's room. Patrice told Carla about that change, and Carla did not object, at least initially. At some point the Pinery home owners' association objected to Patrice's ex-husband's parking his taxicab in the neighborhood, and the ex-husband moved out. Patrice, Phillipe, the youngest five children, and all the pets continued to live in the Property throughout the second Lease term.

The Extension of Lease expired by its terms on August 14, 2011. The parties signed the same document on June 25, 2011, apparently agreeing to further extend the Lease term another year, or at least until June 24, 2012. The Ledesma family, with five of the six children and all of the pets, continued to live in the Property until March of 2012.

In early March of 2012, Patrice called Carla to tell Carla that the Ledesmas were moving out. On March 24, 2012, Patrice and Carla walked through the Property. At the time of the walk-through, the Ledesmas had not yet finished moving out. Carla made a handwritten list of repairs that she expected the Ledesmas to complete (Plaintiff's Exhibit 3). Both Patrice and Carla signed the handwritten list and dated it as of March 24, 2012. Patrice testified that some of the items on the list were added after she signed it. The Court notes that one of the items, "Removal of animal smell," has an additional note "replace carpet" with "as needed" crossed out. The "replace carpet" handwriting differs markedly from that of the rest of the list. The Court cannot find that Patrice agreed to replace the carpet, especially as both Patrice and Carla testified as to Patrice's efforts to steam clean the carpets, which is inconsistent with any agreement that Patrice would replace the carpet.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Case No. 13-01524 HRT

      Patrice, Jasmine, and Ashlynn each testified as to their efforts to clean the Property. They each testified that the Property was left in a clean condition. The Debtors' Exhibits D through P are pictures of the Property that appear to show that the Property was left in a clean condition. The pictures are dark, so some staining or damage may not be visible, and the pictures do not show every angle of each room or area.

      Carla and her partner, Gary Brooks, testified that the Property was not left in clean condition. They testified as to damage to the walls, floors, carpet, window screens, light fixtures, bathrooms, and yard. They testified that trash, furniture, toys, and sports equipment was left behind, and the carpets smelled of animal urine. Carla's Exhibits 6-94 show the damage to the Property and the trash/items remaining on the Property after the Ledesmas moved out. The pictures appear to have been taken in April of 2012, after Carla had hired a contractor to make repairs and improvements to the Property. By the time the pictures were taken, kitchen appliances had been pulled out (the stove had been moved from the kitchen to an adjoining room), and carpet had been pulled up or removed.

      Carla's Exhibit 4 is a collection of invoices from the contractor she hired. The invoices set forth an extensive amount of work done to the Property in April of 2012. The contractor removed all trash and other personal property left behind after the Ledesmas moved out; removed all the carpet, sealed all the wood subfloors, installed new carpet, and repaired the hardwood floors; repaired damage to walls, sealing and repainting all walls and ceilings; repaired bathroom vanities, reglazed the tub, and re-grouted the tub and all showers; repaired and repainted the kitchen cabinets and drawers; repaired and replaced window blinds and screens; replaced light fixtures and repaired electrical switches. The contractor also pressure washed the outside of the house and deck, stained the house and deck and re-painted trim, cut down trees and shrubs, and cleaned and painted the garage. The total of the invoices exceeds $25,000. Carla testified that she paid the invoices in full.

      Carla also testified that the Ledesmas were supposed to pay their own water bills, but they did not pay the full amount billed by the water district. Carla testified that she had to pay $1,100 to the water district, for water bills incurred while the Ledesmas were living in the Property.

      The Ledesmas filed a joint bankruptcy case on June 17, 2013. Their Chapter 7 case was administered as a no-asset case, and creditors were instructed not to file proofs of claim. On September 16, 2013, Carla, through counsel, filed an objection to the discharge of the Ledesmas' debt to her, under 11 U.S.C. § 523(a)(2). The Court construed the objection as an adversary proceeding Complaint, which was timely filed.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Case No. 13-01524 HRT

## DISCUSSION

Carla seeks a determination that the Ledesmas' debts to her are excepted from their discharge under 11 U.S.C. § 523(a)(2)(A),[3] which applies to debts obtained by "false pretenses, a false representation, or actual fraud." To prevail on her claim under § 523(a)(2)(A), Carla must establish the following elements by a preponderance of the evidence: 1) Patrice and/or Phillipe made a false representation; 2) the representation was made with the intent to deceive Carla; 3) Carla relied on the representation; 4) Carla's reliance was justifiable; and 5) Carla was damaged as a result. *See Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996) (identifying the five elements necessary to a determination of non-dischargeability under § 523(a)(2)(A), but requiring reasonable reliance); *Field v. Mans*, 516 U.S. 59, 69-76 (1995) (establishing justifiable reliance standard under § 523(a)(2)(A)); *Grogan v. Garner*, 498 U.S. 279, 287 (1991) (establishing preponderance of the evidence standard for dischargeability actions).

The Court will consider only those representations made prior to the parties' execution of the Lease. Any representations made after the Lease was obtained, including any representations made during the time period that the Ledesmas were in the process of moving out, cannot form the basis of a § 523(a)(2)(A) claim. *See, e.g., Meltzer v. Mantovani (In re Meltzer)*, 171 B.R. 166, 168 (Bankr. S.D. Fla. 1994) (holding that a promise made after-the-fact was insufficient to support a determination of nondischargeability under 523(a)(2)(A)).

In applying the above law, the Court is mindful that "exceptions to discharge are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor." *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997) (applying § 523(a)(2)(B)).

The Court will discuss separately the representations made by Phillipe and by Patrice.

### A. Phillipe

Phillipe did not have any conversations with Carla before the parties signed the Lease. Every representation that forms the basis of Carla's Complaint was made by Patrice alone. The Court cannot find that Phillipe made any representations at all to Carla, much less that he made any false representations, with the intent to deceive, upon which Carla justifiably relied. The Court will therefore enter judgment in favor of Phillipe on Carla's Complaint.

---

[3] Carla does not specify the subsection of § 523(a)(2) on which she relies, but the only applicable subsection is (a)(2)(A). Subsection (a)(2)(B) applies to false financial statements, of which there was no evidence.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Case No. 13-01524 HRT

### B. Patrice

Carla has identified two representations made by Patrice, during their initial phone conversation: (1) that the family only owned two dogs, a rottweiler and a black lab (the "Pet Representation"), and (2) that although the family included six children, only four of those children would occupy the Property during the Lease term, because the oldest daughter would soon be attending college, and the oldest son would soon be joining the military (the "Child Representation").

The Court finds that Patrice did make the Pet Representation and the Child Representation during the initial phone conversation she had with Carla in late July of 2009. The Pet Representation was false because it omitted the family's third dog, the chihuahua, and because it omitted the family's three or four cats. Patrice knew that it was false. The Court finds that the omission of the chihuahua and the cats was intended to "create and foster a false impression," and was thus made with the intent to deceive. *Marks v. Hentges (In re Hentges)*, 373 B.R. 709, 725-26 (Bankr. N.D. Okla. 2007).

The Court similarly finds that the Child Representation was false, that Patrice knew that it was false, and that it was intended to create and foster a false impression about the number of children who would occupy the Property during the Lease term. Although the oldest daughter did enroll in college, it was a college to which she could commute from the family's home. There was no evidence that the daughter or the Ledesmas made any attempt to find on-campus or other student or apartment housing for her. Instead, it appears that at all relevant times, the family intended for her to remain at home while she was enrolled in college. As to the oldest son, at the time the family moved into the Property, he was only 16 and still in high school. Even if he had intended to join the military after his high school graduation, that would not have taken place during the one-year Lease term. The Court therefore finds that both the Pet Representation and the Child Representation were false representations, made with the intent to deceive Carla. The first two *Fowler Brothers* elements are satisfied.

Carla testified that she actually relied on both the Pet Representation and the Child Representation at the time she agreed to lease the Property to the Ledesmas. She testified that she would not have rented the Property to the Ledesmas had she known the truth about the number of pets and number of children who would occupy the Property. The Court cannot agree. First, the evidence shows that at the time the Ledesmas moved in, and shortly thereafter at the time the parties signed the Lease, Carla knew that the Pet Representation was false. One of the daughters told Carla about the cats when Patrice and Carla did their initial walk-through of the Property, before the Lease was signed. The Court cannot find that Carla actually relied on the Pet Representation. The Court also questions Carla's actual reliance on the Child Representation. She knew that the children would all be moving in, at least at the beginning of the Lease term. She believed that the oldest two would be moving out at some point, but she was not given any time frame for either child's moving out. She knew that at least for some period of

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Case No. 13-01524 HRT

time, the Property would be occupied by all six children. And, she did not include in the Lease a limitation on the number of persons who could occupy the Property at any given time.

Even if Carla had not known the truth at the time of the Lease, there is no question she knew at the time she agreed to extend the Lease that three dogs, three to four cats, and six children were living in the Property. The parties even modified the Lease to accommodate the then-existing pets, stating "No additional pets or replacement of any pets." Carla testified that she agreed to extend the Lease because she was distracted by her partner's serious health condition. The Court is sympathetic to Carla's position, but the fact remains that her voluntary extension of the Lease, with a specific provision allowing the pets to remain on the Property, weighs against a finding that Carla would not have entered into the Lease knowing the truth about the pets or the children. As further evidence, Carla entered into the second extension almost a year later. Given that Carla had two, separate opportunities to end the Lease after learning the truth about the number of pets and number of children, and failed to do so, the Court cannot conclude that she would not have entered into the Lease had she known the truth at the beginning. Thus, the Court cannot find that Carla actually relied on the Pet Representation or the Child Representation. Carla has not satisfied the third *Fowler Brothers* element.

Even if Carla had actually relied on the Pet Representation and the Child Representation at the time she initially entered into the Lease, the Court cannot find her reliance to be justifiable. To be sure, the standard for showing justifiable reliance as established by the Supreme Court in *Field v. Mans* is fairly low, and a party may justifiably rely on a misrepresentation even when she could have ascertained its falsity by conducting an investigation. *See Sanford Institution for Savings v. Gallo*, 156 F.3d 71, 74 (1st Cir. 1998) (citing Restatement (Second) or Torts § 540, 541 cmt. a (1976)). "However, the reliance on misrepresentations known to the victim to be false or obviously false is not justified; falsity which could have been discovered by senses during a cursory glance may not be relied upon." *Id.* at 75 (citations omitted). Here, at the time the Ledesmas moved in, and shortly thereafter when the Lease was signed, Carla knew the Pet Representation to be false. She did not justifiably rely on the Pet Representation.

The Court also finds that Carla did not justifiably rely on the Child Representation. The representations that the oldest daughter would move out to attend college and that the oldest son would move out to join the military were vague promises that raised red flags. Even though Carla did not have prior professional experience as a landlord, she did have life experience as a retired teacher. She struck the Court as intelligent and alert. While Carla did not need to conduct an investigation, she cannot simply "bury [her] head in the sand and willfully ignore obvious falsehoods." *Johnston v. Campbell (In re Campbell)*, 372 B.R. 886, 892 (Bankr. C.D. Ill. 2007). Further, as discussed above, the fact that Carla entered into two extensions of the Lease knowing of the falsity of the representations belies any conclusion that her reliance on the representations was justifiable. Carla has not satisfied the fourth *Fowler Brothers* element as to either the Pet Representation or the Child Representation.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Case No. 13-01524 HRT

Given that the Court cannot find actual or justifiable reliance on the Pet Representation or the Child Representation, discussion of the remaining *Fowler Brothers* element is not required. However, out of an abundance of caution, the Court will discuss the issue of damages. In order to recover for her damages, Carla must show that her damages were proximately caused by the Pet Representation or by the Child Representation. *See, e.g., Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1223 (9th Cir. 2010) (§ 523(a)(2)(A) requires both "but for" cause in fact and proximate cause); *see also Hernandez v. Musgrave (In re Musgrave)*, 2011 WL 312883 at *9-11 (10th Cir. BAP Feb. 2, 2011). Here, the Court cannot find that the damages Carla sustained were proximately caused by Carla's reliance on the Pet Representation or the Child Representation.

First, much of the work done to repair and improve the Property after the Ledesmas moved out did not appear to be related to the number of pets or the number of children that had been living in the Property. Specifically, the repairs and improvements made to the exterior of the Property (pressure washing, trim repainting, landscaping improvements) were not tied to the Ledesma children or pets. Mold in the showers, failure of the tub glazing, a broken doorbell, tar on the dryer vent, broken electrical switches, a broken stove handle, broken kitchen cabinets or missing drawers, and abandoned trash or personal property were not tied to the number of pets or to the presence of the two oldest children. And, the Ledesmas' failure to pay their water bill has no correlation to the number of pets or the presence of the two oldest children (one of whom did move out, during the second Lease extension). Carla may have a general claim against the Ledesmas based on breach of contract, for the Ledesmas' failure to return the Property to Carla in clean condition, but general contract damages are not sufficient to show damages attributed to the tort of misrepresentation. *See Gem Ravioli, Inc. v. Creta (In re Creta)*, 271 B.R. 214, 221 (1st Cir. BAP 2002) ("[N]ot every claim for loss or damage, arising from a contract that was entered into based on a debtor's fraudulent misrepresentation, will be excepted from discharge.").

Even if Carla had shown that the damage to the carpet, floors and window screens was caused by animals, it is not clear that the damage resulted from Carla's reliance on the Pet Representation. *See Pugh v. Ennis (In re Ennis)*, 512 B.R. 224 (Bankr. W.D. Mo. 2014) (damages for misrepresentation under § 523(a)(2)(A) limited to the damages caused by the misrepresented animals). At all times, Carla knowingly allowed the two larger dogs to live on the Property. Before the Lease signing, Carla was aware that the Ledesmas owned the cats. Only the undisclosed chihuahua remains as a possible source of damages flowing from the Pet Representation. And any such damage would be limited to the damages incurred during the initial Lease term, because in the Lease Extension, Carla specifically agreed to allow the current number of pets to remain on the Property. The Court cannot find that Carla has met her burden of proof as to proximate cause. The final *Fowler Brothers* factor is not satisfied.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Case No. 13-01524 HRT

## CONCLUSION

For the reasons discussed above, the Court finds that Phillipe made no representations to Carla. The Court will enter judgment in favor of Phillipe on Carla's Complaint. The Court further finds that Carla has established that Patrice made two false representations to her, the Child Representation and the Pet Representation, which were false and were made with the intent to deceive. But Carla has not shown that she actually relied on the representations, that her reliance was justifiable, or that her damages were proximately caused by her reliance on the representations. Therefore the Court will enter judgment in favor of Patrice on Carla's Complaint.

Accordingly, it is

HEREBY ORDERED that a separate judgment in favor of Phillipe and Patrice will be entered on Carla's Complaint. Carla's claims against both Phillipe and Patrice are DISCHARGED.

Dated this __19th__ day of February, 2015.

BY THE COURT:

Howard R. Tallman, Judge
United States Bankruptcy Court